UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JAVIER RIVERA FRANCO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-148 |
| | § | |
| KISHA A COLLINS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION TO DISMISS CASE

This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A.  Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992). Applying these standards, it is respectfully recommended that the Court dismiss Plaintiff's complaint for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B).  It is respectfully

recommended further that this dismissal be counted as a "strike" for purposes of 28 U.S.C. § 1915(g).

## I. Jurisdiction.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. Procedural background and Plaintiff's allegations.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and is currently confined at the McConnell Unit in Beeville Texas. He filed his original complaint on April 25, 2014, alleging that McConnell Unit mailroom personnel had improperly denied him incoming mail and interfered with his outgoing mail, in violation of his First Amendment rights, and that certain McConnell Unit officers and officials were aware of the mailroom staff's improper conduct, but failed to intervene or reprimand them. (*See* D.E. 1, pp. 17-21). He named as defendants: (1) Kisha A. Collins, mailroom supervisor; (2) Warden Gary L. Currie; (3) Assistant Warden Maria D. Ramirez; (4) Elaine Kennedy, Region IV Director; (5) Jennifer Smith, Supervisor of the Mail Director Review Committee ("DRC") in Huntsville, Texas; and (6) Rebecca R. Santry, a mailroom employee. *Id.* at 4.

A *Spears*[1] hearing was held on May 20, 2014. The following allegations were raised in Plaintiff's original complaint (D.E. 1), his attached grievances and exhibits, or at the hearing:

In September 2012, Plaintiff was on a bench warrant to Tarrant County and while at the Tarrant County Visitation Booth, he and his family took numerous photographs of Plaintiff alone and with his family members. (*See e.g.* D.E. 1, p. 29, Plaintiff's exhibits #2, #3, and #4). Plaintiff received and possessed copies of the photographs taken in September 2012 while at the McConnell Unit.

Sometime in 2013, Plaintiff decided that he wanted to post online for a prison pen pal and he needed a picture of himself. He sent his sister some of the Tarrant County Visitation Booth pictures and asked her to make them look better by changing the background and adjusting the color. Plaintiff's sister made the changes to the photographs and mailed them back addressed to Plaintiff at the McConnell Unit.

On August 7, 2013, Ms. Collins and Ms. Santry notified Plaintiff that he had received photographs from his sister; however, the mailroom staff mistakenly believed that the pictures had been taken in Plaintiff's McConnell Unit cell in violation of prison rules. Based on this belief, Ms. Collins and Ms. Santry refused to release the photographs to Plaintiff nor would they return the photographs to Plaintiff's sister. Defendants stated that Plaintiff's only option was to release the photographs to the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)*; see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

Director's Review Committee ("DRC") on appeal. This was done, and the DRC upheld the decision of Ms. Collins and Ms. Santry.

On August 13, 2013, Plaintiff filed a Step 1 grievance, Grievance No. 2013199685, complaining about the August 7, 2013 confiscation of the photographs by the mailroom. (D.E. 1, pp. 6-7, and 31-32).[2] *Plaintiff argued that, upon completion of the appeals process, the objected-to mail could be (1) mailed out at the offender's expense or (2) destroyed with the offender's permission, but the mailroom was refusing to send the photographs back to his family. Id.* at 6, 31.

On October 9, 2013, Warden Currie denied Plaintiff's grievance, responding:

> Your complaint has been investigated. The photos you received were appropriately denied and you were provided with the opportunity to appeal the decision. You appealed this decision to the Director's Review Committee and the Director's Review Committee upheld the unit's decision based on security concerns. According to policy you have no choice as to the disposition of these photos. No further action required.

(D.E. 1, pp. 6-7, at 7; 31-32, at 32).

Plaintiff filed a Step 2 appeal of Grievance No. 2013199685. (D.E. 1, pp. 10-11, and pp. 37-38). The Step 2 appeal was denied on the basis of the Step 1 answer. *Id.* at 11, 38.

On August 26, 2013, Plaintiff filed a Step 1 Grievance, Grievance No. 2013209019, complaining that on that same date, "security information printouts" had been "planted" into his mail by mailroom staff, while other matters were removed. (D.E.

---

[2] Plaintiff has offered two copies of the same grievance.

1. pp. 8-10, 33-34). In particular, Plaintiff received an envelope which contained a TDCJ form listing Plaintiff's "Physical Attributes," such as identifying scars, tattoos, or marks on his body. Plaintiff states that inmates are not supposed to have access to this form, and he believes a mailroom employee planted it in his mail in an attempt to get Plaintiff in trouble and in retaliation for Plaintiff filing a grievance about the photographs.

On October 10, 2013, Warden Barber denied this grievance, responding:

> Your complaint has been investigated. On August 7, 2013, you received a letter containing eleven photos, a letter, and legal documents. The pictures were denied due to security concerns and you received the letter and documents. No evidence was found to support your claims of the items being taken out or replaced. No further action is warranted.

(D.E. 1, p. 9, p. 34).

For relief, Plaintiff is seeking a declaration that Defendants violated his constitutional rights; a preliminary and permanent injunction against all Defendants to stop harassing him, to prevent future harassment, and to stop sabotaging his mail; compensatory damages in the amount of $50,000 against each Defendant; punitive damages in the amount of $75,000 against each Defendant; and the return of all confiscated personal family photographs. (D.E. 1, p. 22).

### III. Legal standard.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *accord Biliski v. Harborth*, 55 F.3d

160, 162 (5th Cir. 1995) (per curiam). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002). An action may be dismissed for failure to state a claim when it is clear that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted). The complaint must be liberally construed in favor of the plaintiff and the truth of all pleaded facts must be assumed. *Id*.

**IV.   Discussion.**

    **A.   Eleventh Amendment immunity.**

Plaintiff is suing Defendants in their official and individual capacities for monetary damages, as well as for injunctive relief.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state…." Const. Amend. XI. This withdrawal of jurisdiction effectively confers immunity from suit. *P.R. Aqueduct and Sewer Auth. v. Metcalf & Eddy,* 506 U.S. 139, 144 (1993). When a plaintiff files suit against state officials in their official capacities, the lawsuit is effectively one against the State. *Hafer v. Melo,* 502 U.S. 21, 25 (1991). That is, a claim for monetary damages against a state official in his or her official capacity is "no different from a suit against the

state itself," and consequently, is barred by the Eleventh Amendment.³ *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). *See also McKinley v. Abbott,* 643 F.3d 403, 406 (5th Cir.), *cert. denied*, 132 S. Ct. 825 (2011) ("Eleventh Amendment immunity extends to state officials who are sued in their official capacities because such a suit is actually one against the state itself."). Indeed, the Fifth Circuit has repeatedly held that the Eleventh Amendment bars claims for money damages against TDCJ officers in their official capacities. *See e.g., Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

To the extent Plaintiff is suing the named Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. *See Frew,* 540 U.S. at 437. Thus, it is respectfully recommended that the Court dismiss with prejudice Plaintiff's claims against the individual defendants in their official capacities for monetary damages as barred by the Eleventh Amendment.

**B.     No physical injury.**

Plaintiff is seeking compensatory damages of $75,000 against each defendant; however, he has not alleged that he suffered any physical injury as a direct result of the conduct of any named Defendant herein.

42 U.S.C. 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior

---

³ The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief. *Ex parte Young*, 209 U.S. 123, 159 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office).

>showing of physical injury …or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e).

The Fifth Circuit has held unequivocally that section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury. *See Geiger v. Jowers,* 404 F.3d 371, 374-375 (5th Cir. 2005) (noting that, although the physical injury requirement is more commonly addressed in the context of Eighth Amendment claims, there is no reason to treat prisoner First Amendment claims differently from those alleging Eighth Amendment violations).

Plaintiff did not allege, nor could he, that he suffered a physical injury when he was denied the receipt of ten or eleven photographs, and in fact, he testified that, upon additional review, the mailroom staff eventually admitted they had made a mistake and surrendered the photographs to him. Similarly, Plaintiff admitted that he too "made a simple mistake" when he altered the photographs by placing borders on the pictures. Plaintiff's objection to the withholding of ten altered photographs that were eventually returned to him simply does not state a viable physical injury to support a claim for compensatory damages under 1997e(e).

   **C.    First Amendment rights.**

Finally, taking Plaintiff's allegations as true, he fails to state cognizable First Amendment claims against the mailroom employees or prison administrators for violations of his constitutional rights. It is well established that the constitutional rights

of prisoners are more limited in scope than the constitutional rights held by individuals in society at large. *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). In the context of the First Amendment, the Supreme Court has noted that some rights are simply inconsistent with the status of being a prisoner or "with the legitimate penological objectives of the corrections system*.*" *Pell v. Procunier*, 417 U.S. 817, 822 (1974). For example, in *Pell,* the Supreme Court sustained the prison's proscriptions of media interviews with individual inmates. *Id.*, at 833-35. The Supreme Court has upheld the prohibitions on the activities of a prisoners' labor union. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 133 (1977). The Court has approved prison systems' restrictions on inmate-to-inmate written correspondence. *Turner v. Safely*, 482 U.S. 78, 93 (1987). Indeed, the Supreme Court has noted that, because the "problems of prisons in America are complex and intractable," and the courts are particularly "ill equipped" to deal with these problems, federal courts generally defer to the judgments of prison officials in upholding [First Amendment] regulations against constitutional challenge. *Shaw*, 532 U.S. at 229.

The Fifth Circuit has noted that the Supreme Court "has never held that reading inmate mail violates the First Amendment." *Busby v. Dretke*, 359 F.3d 708, 722 (2004) (discussing evolution of prisoner cases in the context of the First Amendment, and noting that, although the Supreme Court rejected *censorship* of inmate mail in *Procunier v. Martinez*, 416 U.S. 396, 413 (1974), later Supreme Court cases, such as *Pell* and *Turner*, gave authorities greater leeway in restricting inmates' rights regarding mail. *Busby*, 359 F.3d at 722. Indeed, in a case decided shortly after *Martinez*, the Supreme Court clarified

that "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974).

In *Brewer v. Wilkinson*, 3 F.3d 816 (5th Cir. 1993), the plaintiffs challenged the prison unit's policy of opening and inspecting incoming legal mail outside of the presence of the inmate. *Id.* at 817-818. The inmates claimed that the practice infringed upon their First Amendment rights of free speech and access to the courts. The *Brewer* Court recognized the distinction between legal and non-legal correspondence, as well as incoming versus outgoing mail in the context of the prison environment, and ultimately held that, whether in the context of free speech or access to the courts, a prison regulation that impinges on an inmate's constitutional rights must be reasonably related to legitimate penological interests. *Id.* at 825. The Fifth Circuit concluded that a prisoner need not be present when incoming legal mail is opened and inspected for contraband, but that the opening and inspection of outgoing legal mail would violate a prisoner's right to free speech and possibly, access to the courts. *Id.* 825-26. The Court reasoned that the prison would have a greater security concern as regards to incoming mail, both legal and nonlegal, as opposed to outgoing mail, while a prisoner would have a greater interest in corresponding freely and privately with his attorney or the Court on legal matters. The *Brewer* Court held that the plaintiffs had stated successfully a First Amendment claim challenging the inspection of their outgoing legal mail. *Id.* at 826.

*Brewer* effectively forecloses Plaintiff's First Amendment claim because the McConnell Unit has a legitimate security interest in monitoring Plaintiff's incoming mail. The photographs appeared to be taken in a correction facility, and in fact, were taken at

the Tarrant County Visitor's Booth, and the mailroom staff appropriately flagged them as presenting a possible security risk. Had the pictures been taken at the McConnell Unit, they might possibly convey information regarding individual cells or layouts that prison security does not want published, and it cannot be said that the mailroom staff acted unreasonably, let alone attempted to violate Plaintiff's constitutional rights. Indeed, the DRC agreed with the mailroom's decision and the photographs were then held as "uninspectable" until it was confirmed that the photographs were taken at Tarrant County and were returned to Plaintiff.

Plaintiff expressed concern that he received a copy of the TDCJ form listing his "Physical Attributes" and identifying any tattoos, marks, or scars on his body. It appears that the mailroom staff compared this list with the photographs at issue to determine when the photographs might have been taken. Regardless, there is no constitutional violation in prison officials attempting to determine when and where the photographs were taken, and there is absolutely no evidence that any defendant "planted" the form in an attempt to cause Plaintiff harm, nor did Plaintiff suffer any harm.

Plaintiff alleges that Collins and Santry violated mailroom policies and practices when, after they confiscated the photographs, refused to follow Plaintiff's directive to mail them back to his sister. However, an official's failure to follow alleged TDCJ rules and regulations does not in-and-of-itself state a constitutional violation. *See Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996).

Similarly, Plaintiff complains that Warden Currie, Warden Ramirez, Director Kennedy, and Investigator Smith failed to consider properly his claims against the

mailroom employees. However, Plaintiff has no constitutional right to have his grievances investigated or resolved in his favor. *Geiger,* 404 F.3d at 374 (prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction and any alleged due process violation arising from the alleged failure to investigate prisoner grievance is indisputably meritless).

## V. Recommendation.

Plaintiff has failed to state cognizable constitutional claims against the named Defendants herein. Accordingly, it is respectfully recommended that this case be dismissed with prejudice for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1). It is respectfully recommended further that this dismissal count as a "strike" for purposes of 28 U.S.C. § 1915(g) against this Plaintiff, and that notice of this dismissal be forwarded to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler Texas, 75702, Attention: Betty Parker.

Respectfully submitted this 22nd day of May, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).